T. J. Moss Tie Company, Appellant, v. Emile and
August Kreilich, Respondents.

### St. Louis Court of Appeals, May 2, 1899.

Conversion: COUNTERCLAIM FOR DAMAGES. In the case at bar all that
was necessary to transfer the ties to appellants, in pursuance of the
previous agreement to turn them back if not used in the construction
of the road, was a manifestation of the assent of the railroad com-
pany, acting by its president, that appellants had permission to take
possession of the ties; and held, that this was clearly and unmistak-
ably given in the letters of Cole to Fristoe.

*Appeal from the St. Genevieve Circuit Court.*—Hon.
John V. Noel, Special Judge.

REVERSED AND REMANDED.

Edward A. Rozier for appellant.

Corporations must act through their agents, and the acts
of such agents within the scope of their authority are the acts
of the corporation.    Sparks v. Dispatch Co., 104 Mo. 431,
439; Jones v. Williams, 139 Mo. 1-26; Bank v. Gilstrap, 45
Mo. 419; Moore v. Gauss & Sons Mfg. Co., 113 Mo. 106.    The
president of a corporation is its executive officer and acts per-
formed by him, the presumption will be indulged that the act
is legally done and is binding upon the body.    Smith v.
Smith, 62 Ill. 493; Jones v. Williams, 139 Mo. 1-27; Mora-

Tie Co. v. Kreilich.

wetz on Corporations, sec. 538. And can without special authority perform all acts of ordinary nature, which by usage or necessity are incident to his office, etc. Sparks v. Dispatch Transfer Co., 104 Mo. 531; Boone on Corporations, sec. 144; Stokes v. Pottery Co., 46 N. J. L. 237; Bambrick v. Campbell, 37 Mo. App. 460; State ex rel. v. Heckart, 49 Mo. App. 280, 284. "Speaking generally the acts of the president of a corporation in the management of the corporation and within the scope of his authority, are, of course, the acts of the corporation itself." 4 Thompson on Corporations, p. 4613; Bambrick v. Campbell, 37 Mo. App. 460. "The law ascribes to the president of a business corporation the authority of its general agent for the purpose of binding it by contracts made within the ordinary scope of its business, and that in the absence of notice to the contrary, persons dealing with a corporation may safely act upon that assumption." 4 Thompson on Corporations, sec. 4618. "The president acting as the general manager either by express appointment or by tacit consent, is accorded even greater powers." 4 Thompson on Corporations, sec. 4627. And in this case the president was given full powers to build the railroad and express power to settle with the Moss Tie Company for these ties. This act of the president has been fully ratified by the company. 1 Beach on Private Corporations, pp. 337, 338; 1 Beach on Railways, sec. 17; Bank v. Fricke, 75 Mo. 178-183; Campbell v. Pope, 96 Mo. 468-473.

T. B. WHITLEDGE and W. CARTER for respondent.

The trial court should pursue one method or the other and not both, and having pursued the method pointed out by section 2188 in the trial of this case, the court committed no error in failing to make a finding under section 2135, at the request of appellant. Suddarth v. Robertson, 118 Mo. 286; Kostuba

v. Miller, 137 Mo. 161, 173; Dobyns v. Bay State Ben. Ass'n, 144 Mo. 95, 112, 113. Cole had no power nor authority, under facts of this case to sell said ties, and that he did not sell them. 2 Cook on Corporations, sec. 716 and note, .p. 1505, 1516; Bank v. Farmers & Trust Co., 14 Wis. 325; Pittsburg, Mining Co. v. Rees, 118 Pa. St. 355; Stanley v. Sheffield, 83 Ala. 260. Giving the plaintiff the benefit of the strongest cases in their favor decided by our supreme and appellate courts of this state, then we shall insist that applying the rules laid down in those cases to the facts in this case, that the T. J. Moss Tie Company has no title to these ties, because the president C. B. Cole had no power to reconvey these ties. Sparks v. Dispatch Transfer Co., 104 Mo. 531; Jones v. Williams, 139 Mo. 126; Kaes v. Lime Co., 71 Mo. App. 101. These Missouri cases do not mitigate against the authority cited by us. The same rule applies as to admissions and declarations of the president of a corporation. 2 Cook on Corporations, sec. 726, p. 1524. In the form of action which appellant saw proper to adopt in this case, it was absolutely necessary for it to show title in itself to the property before it could recover the value of the ties from respondents. This because, upon the recovery of the judgment against respondents and the satisfaction of the same by them the title to the ties would vest in the defendants. Miller v. Hyde, 25 L. R. A. 42; 161 Mass. 472; Turley v. Tucker, 6 Mo. 583-586; Vanzant v. Hunter, 1 Mo. 71; Deland v. Vanstone, 26 Mo. App. 297-301; McDonald v. Mangold, 61 Mo. App. 291.

BLAND, P. J.—The action is for the alleged conversion of certain railroad ties; answer general denial, and counterclaim for damages accrued on account of loss of lands on which the ties had been placed. Trial was had before a special judge without a jury, who on the evidence found the issues for the defendants and rendered judgment accordingly. Plaintiffs appealed.

At the close of all the evidence the plaintiff moved the court in writing to make a finding of the facts, and also asked for instructions or declarations of the law of the case; the court gave some and refused other of these instructions, but refused to make special finding of facts. This action is as-assigned as error by the appellant. The court was bound when asked to either give or refuse instructions, or to make a finding of the facts; Suddarth v. Robertson, 118 Mo. 286; Dobyns v. Bay State Ben. Ass'n, 144 Mo. 95; but was not required to do both; Kostuba v. Miller, 137 Mo. loc. cit. 173. Appellant got the benefit of the practice prescribed by section 2188, and this court is enabled to see from the instructions given and refused the theory of law upon which the trial court proceeded. This answers all the requirements of the practice act, and the court committed no error in refusing to make special findings of the facts. The evidence discloses the following conceded facts: That the Chester, Farmington & Western Railroad Company is a railroad corporation, without a road or assets; that in 1895 it undertook to build its road, and to that end acquired a right of way through cultivated lands of the defendants in Ste. Genevieve county; that its then president, Mr. Cooper, was vested with authority to build the road, and that he purchased five thousand railroad cross ties from the plaintiff, about half of which were piled and distributed on the right of way acquired from the defendants; that Cooper failed to raise the funds to build the road and resigned in 1896, and C. B. Cole was elected president of the company and given authority by resolution of the board of directors to raise money to build the road from certain stocks and bonds which were placed at his disposal. It seems that Cole failed to raise money also and the construction of the road yet remained for the future. The ties purchased of plaintiffs were never paid for; the right of way procured from the defendants had been forfeited for failure to build the road before the beginning of this action and the land embraced in it had

reverted to the defendants. Defendants have used and sold four hundred of the ties and it is admitted that there were one thousand, seven hundred and sixty of them on the right of way when this suit was commenced, which the defendants refused to deliver to the plaintiffs on demand. The ownership of the ties was controverted on the trial. Plaintiffs introduced evidence tending to show that the sale was originally for cash on delivery; defendants offered testimony that the sale was on thirty or sixty days time. The conduct of plaintiffs after delivery and their failure to demand payment on delivery, are inconsistent with the theory that the sale was for cash on delivery. Even if it were so, the delivery without demand of payment, and their acquiescence in the possession of the ties by the railroad company long after delivery is evidence of a waiver of the condition. 21 Am. and Eng. Ency. Law, p. 484. Plaintiffs also claim that if they parted with their title through the original contract of sale, they subsequently re-acquired it by a contract made with Cole the president; herein arises the principal controversy. The secretary of the company, Mr. Hough, testified that the only action of the board of directors conferring special authority on Cole, was the resolution placing bonds and stocks at his disposal to raise funds to construct the road; that Cole was elected president and given a majority of the stock of the company under an agreement, by the terms of which Cole agreed to pay all the debts outstanding against the company, including the claim of plaintiffs for their ties, and that Cole did pay all of the debts of the company, except this one. On the other hand Cole testified that a list of the debts was handed to him; that he looked it over, saw that plaintiff's was the largest of them, and said to the board of directors that he would see the plaintiffs and try to get them to agree to let the ties remain on the right of way until the company was ready to use them, and if not used to agree to take them back; that he afterward did make this agree-

ment with the plaintiffs and reported the fact to the board of directors, and that the board acquiesced in the arrangement. J. W. Fristoe, manager of the Moss Tie Company testified that Cole called on him in 1896 about the ties, and that he arranged with Cole to let the ties remain until the first of January,1897, that Cole said he thought by that time he could arrange to use and pay for the ties, but at no time did the Moss Tie Company agree to relinquish its title to the ties. That some such arrangement was made by Cole with Fristoe as manager of the Moss Tie Company, is evidenced by the following correspondence between them. On August 22, 1896, Cole wrote Fristoe as follows:

"Dear Sir:—I am in rect. of your favor 10th to Mr. W. M. Hough, Secty. of C. F. & W. R. which he refers to me. You will no doubt remember a conversation I had with you in regard to these ties about the time I was elected Pt. of the Co. I have been trying hard to get the Co. started but so far with no good result. I think I have the foundation laid to build the road when the present money question is settled. The ties are where they were distributed. I learn some of them were used for fence posts, but as the party is responsible they can be collected for.                    Yours truly,

"C. B. Cole, Pt."

On April 12, 1897, Fristoe wrote Cole the following letter:

"Mr. C. B. Cole, V. P. & M. W. C. & W. R. R.,

"Chester, Ills.

"Dear Sir:—With reference to the ties which we furnished the Chester, Farmington & Western Railroad, and which you were to return to us in the event you did not construct the road, beg to say that there are two or three parties, among them, a Mr. Kreilich, and a Mr. Boeckert, who have already used a number of these ties and who refuse to allow our people to haul back to the river a number that were distributed

on the right of way running through their land. Will you please see that we are put in possession of these ties at least, at once? Our man advises us that already a large number of them have been used for fence posts and other purposes, and the parties mentioned above are claiming the balance of the ties, on the grounds that the right of way has reverted to them on account of lapse of time in which the road was to be built, and that we are trespassers on their land in having our ties there. This matter has been to us a constant source of annoyance and one of considerable expense, and we trust that you will take immediate steps to see that we are at least put in possession of the property.              Yours truly,

"J. W. Fristoe, Mngr."

On April 19, Cole replied as follows:

"T. J. Moss Tie Co., St. Louis, Mo.,

"Dear Sir:—I find your favor 12th on my return home this a. m.    I am sorry to learn that the parties are making trouble about the ties.    I have written to Mr. T. B. Whitledge and Mr. Leon Bogy at St. Mary to do all in their power to induce the parties to let go and think under the circumstances they will be able to do so.    I regret that you should have such trouble in the matter and will do my best to assist you.

"Yours truly,

"C. B. Cole, Pr."

Again on April 23, 1897, Cole wrote as follows:

"T. J. Moss Tie Co.,

"Dear Sirs:—I am advised by Mr. Whitledge of St. Mary that Mr. Kreilich will turn over the ties to any one you may send with an order for same.    Mr. W. will render your agent such assistance as he can in the matter.

"Yours truly,

"C. B. Cole."

Other correspondence with reference to the same matter was had, not necessary to set out in this petition.    T. B. Whitledge referred to in Cole's letter, was at the time the attorney

Tie Co. v. Kreilich.

of the railroad company and is one of the attorneys for the respondent in this action. Mr. Bogy referred to was an officer of the company. Neither testified on the trial. Armed with the letters of Cole, Miller, an agent of the Moss Tie Company, accompanied by Mr. Rozier, their attorney, called on the defendants for leave to enter their premises and take away the ties, and both testified that defendants granted them leave to take away the ties; that they then employed H. G. Roseman to haul off the ties, but Roseman was denied access to the premises for that purpose and threatened with a prosecution for trespass if he entered the premises to take away the ties. One of the defendants denied that he agreed to let Miller, agent of appellant, have the ties, and demanded that he first produce the affidavit of The Moss Tie Company that they owned the ties; that he did not know who owned the ties at that time; but on the trial said he knew the appellants owned the ties because they had brought suit for them and swore to it. The authority of Cole to turn the ties back to appellant is also controverted. Cole testified that he was general manager of the company; that he succeeded Cooper, who had express authority to build the road; that he reported the arrangement he had made with appellant to the board of directors and that his action was approved by the board. No witness contradicted this evidence and in the light of all the facts we do not think there is room to doubt but that it was tacitly understood when Cole was elected president to succeed Cooper, that he succeeded to all the powers and authority with which Cooper had been theretofore clothed, that is to do all things necessary to build the road.

The learned trial judge of his own motion gave an instruction to the effect that Cole as president of the railroad company had authority to turn the ties back to appellants, but that he did not do so. The finding of the latter fact, that Cole did not turn the ties back to the appellants, is not only against the weight of the evidence, but is in the teeth

FINDING against the evidence.

of all the evidence on that point. The letters of Cole to Fristoe are conclusive that he did authorize appellants to take the ties; this was enough to turn them back; it was not necessary that Cole should have gone on the premises of defendants with one of the appellants and formally or ceremoniously turned over the ties; their identity was not in doubt, their location was well known to both parties, and all that was necessary in the circumstances to transfer the ties to appellants in pursuance of the previous agreement—to turn them back if not used in the construction of the road—was a manifestation of the assent of the railroad company acting by its president, that appellants had permission to take possession of the ties; this was clearly and unmistakably given in the letters of Cole to Fristoe. Groff v. Belche, 62 Mo. 400; Glass v. Galvin, 80 Mo. 297; Bobb v. Bobb, 76 Mo. 419; Nance v. Metcalf, 19 Mo. App. 188. The testimony does not disclose that the defendants ever took formal possession of the ties (except the four hundred they used and sold); no one ever delivered possession to them; they are not bailees of the ties by an agreement nor contract, and if bailees at all are so by casualty, because the lands on which they were reverted to them, and as such bailees were bound to deliver them to the true owner on demand. But if the title to all the ties was in the railroad company when the four hundred were converted, respondents are not liable to appellants for the value of these four hundred; the others they held at their peril, and can only escape liability by showing that appellants did not own the ties when demand for their delivery was made and the suit was begun. For the errors herein noted, the judgment is reversed and the cause remanded. All concur.