A. C. STEWART et al., Trustees, Appellants, v. BRINSON-WAGGONER GRAIN COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted January 9, 1912. Opinion Filed February 6, 1912.

1. **APPELLATE PRACTICE:** Conclusiveness of Finding of Facts. In an action at law, tried without a jury, the weight of the evidence is a question for exclusive determination by the trial court.

2. ————: Trial Practice: Special Finding of Facts: Conclusiveness. A finding of facts by the trial court in an action at law is in the nature of a special verdict, and it will not be interfered with on appeal if there is substantial evidence to support it.

3. **TRIAL PRACTICE:** Special Finding of Facts: Declarations of Law: Duty of Court. A trial court, sitting as a jury in an action at law, may be asked to give declarations of law, or to make a finding of facts, with its conclusions of law, but cannot be required to do both, under section 1972, Revised Statutes 1909.

4. ————: ————: **Defective Finding: Right of Party to Complain.** Where defendant asked the court, sitting as a jury in an action at law, for a special finding of facts, pursuant to section 1972, Revised Statutes 1909, but plaintiff insisted upon declarations of law being passed upon, and the court yielded to that insistence, it is doubtful whether plaintiff may predicate assignments of error, on appeal, to any deficiencies or omissions in the finding.

5. ————: ————: ————: ————. Where the trial court sits as a jury in an action at law, the appellate court will not entertain a complaint concerning its action in giving and refusing declarations of law, in failing to find separately as to the facts, and in failing to separate its finding of facts from its conclusions of law, where the rule, whereby, under section 1972, Revised Statutes 1909, a party may ask for declarations of law, or for a finding of facts and conclusions of law thereon, separately stated, but may not ask for both, was disregarded by both parties, and where, by examining the findings and conclusions and considering them with the declarations of law given and refused, the appellate court is able to determine the theory upon which the case was tried and decided.

6. ————: **Declarations of Law: Failure to Indicate Action on.** In an action at law tried by the court sitting as a jury, where the court's ultimate action clearly shows what view it took of certain requested declarations of law, it is not ground for reversal that the court failed to indicate its action on such declarations, by writing "given" or "refused" thereon.

7. ————: **Special Finding of Facts: Judgments: Separate Finding on Various Counts.** Where the court finds against the plaintiff on the whole case, a separate finding and judgment on each count of the petition is unnecessary.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

AFFIRMED.

*Eliot, Chaplin, Blayney & Bedal* for appellants.

(1) The condition of the account between Bird and the Export Company was an irrelevant issue. Even though the Export Company was indebted to Bird (which is by no means conceded) this did not authorize him to appropriate credits or funds of his

principal in liquidation of his account.  Benny v. Pegram, 18 Mo. 191.  (2) Though an agent can testify as to the extent of his authority he must state the facts concerning the agency and not state a mere conclusion that he had the authority to do a particular act.  Griswold v. Haas, 145 Mo. App. 578; 31 Cyc. 1652; 17 Cyc. 219.  (3) Whether the Merchants' Exchange did or did not have rules for enforcing contracts made with reference to future deals in grain was an immaterial issue, and evidence to this effect should not have been submitted.  (4) The court excluded a question relating to the transfer of the balance of Bird's account to the Cottingham Grain Company, and defendant's failure to hold this balance for the benefit of the Export Company on the theory that this balance did not belong to the Export Company, and yet in its opinion the court found that the Bird and the Export Company's accounts were one and the same.  (5) The court erred in failing to mark the peremptory declarations of law offered by plaintiff at the close of the entire case and the third declaration of law offered by plaintiff either "given" or "refused."  R. S. 1909, sec. 1987; McQuillin, Instructions to Juries in Civil Cases, par. 135; McQuillin's, Instructions to Juries in Civil Cases, par. 8.  (6) Failing to mark plaintiff's third declaration of law and the peremptory declarations offered at the close of the case, was equivalent to refusing the declarations.  Calef v. Thomas, 81 Ill. 478; 38 Cyc. 1770; 38 Cyc. 1773.  (7) It is the duty of a court where a case is tried without a jury and a request is made therefor by one of the parties to the case to find the facts, separately from the conclusions of law.  R. S. 1909, sec. 1972; Settle v. Ins. Co., 131 S. W. 136; Hammel v. Talbot, 72 Mo. App. 22; Bailey v. Emerson, 87 Mo. App. 225.  (8) It is not proper for the court to state its findings of facts and conclusions of law in its opinion. 38 Cyc. 1960.  (9) The findings of fact and conclusions

of law filed by the court were indefinite and not suffi-
cient to indicate on what facts the court based its con-
clusions of law, and were not such a finding of facts
and statement of conclusions of law as was contem-
plated by the statutes.    Hammel v. Talbot, 72 Mo.
App. 22; Bailey v. Emerson, 87 Mo. App. 225; Grain
Co. v. Becker, 76 Mo. App. 375; 38 Cyc. 1964.    (10)
Though there should have been only one judgment in
the case, still the court should have made a statement
of its finding the issues in favor of the defendant in
regard to every count of the petition and not simply
have made one general finding in favor of the defend-
ant.    (11)  It is not within the implied authority of
a general manager as such to issue checks in his own
favor, or to direct credits belonging to his principal
to be applied in payment of his individual account.
Bank v. Orthwein, 160 Mo. App. 369; Lee v. Smith,
84 Mo. 304.    (12)  An agent has no implied power to
use the funds of his principal in payment of his indi-
vidual indebtedness.    Bank v. Orthwein, 160 Mo. App.
369; Charcoal Co. v. Lewis, 154 Mo. App. 548; Lee v.
Smith, 84 Mo. 304; Kitchens v. Teasdale Co., 105 Mo.
App. 463; Butler v. Dorman, 68 Mo. 298; Lamson v.
Beard, 94 Fed. 30; Anderson v. Kisson, 35 Fed. 699;
Benny v. Rhodes, 18 Mo. 147; Wheeler & Wilson Co. v.
Given, 65 Mo. 89; Mfg. Co. v. Hilbert, 24 Mo. App.
338; Benny v. Pegram, 18 Mo. 191; Greenwood v.
Burns, 50 Mo. 52.    (13)   The authority of an agent to
apply funds of his principal in payment of the agent's
debts must be an authority to do the particular act
under the circumstances.    Bank v. Orthwein, 160 Mo.
App. 369; Ins. Co. v. Ins. Co., 8 Mo. App. 408.    (14)
Any neglect on the part of the directors or other offi-
cers of the Export Company to find out about the
application which Bird had made of the Export Com-
pany's credits with the defendant would not consti-
tute a ratification of Bird's action or  an estoppel.
Bank v. Orthwein, 160 Mo. App. 369; Kitchens v. Teas-

dale Co., 105 Mo. App. 463; Lee v. Smith, 84 Mo. 304. (15) One knowingly receiving the funds of a principal from an agent in payment of the agent's individual indebtedness to him does so at his peril. Bank v. Orthwein, 160 Mo. App. 369; Lee v. Smith, 84 Mo. 304; Kitchens v. Teasdale Co., 105 Mo. App. 463; Friedman & Sons v. Kelly, 126 Mo. App. 279; St. Louis Co. v. Hilbert, 24 Mo. App. 338; Lamson v. Beard, 94 Fed. 30; Anderson v. Kisson, 35 Fed. 699. (16) The checks bore proof on their face that they were drawn on the funds of the Export Company and the defendant knew that the proceeds were to be used in what appeared on its face to be an individual transaction of Bird's; and therefore defendant knew that in the absence of a special authority in Bird the checks were unauthorized, and that it would be liable to the Export Company for their proceeds. Bank v. Orthwein, 160 Mo. App. 369; Charcoal Co. v. Lewis, 154 Mo. App. 548; Lee v. Smith, 84 Mo. 304; Kitchens v. Teasdale Co., 105 Mo. App. 463; Lamson v. Beard, 94 Fed. 30; Anderson v. Kisson, 35 Fed. 699. (17) One accepting the funds of a principal in payment of an agent's individual debt has the burden of proving the right of the agent to so apply the funds. Banking Co. v. Com. Co., 195 Mo. 262; Bank v. Orthwein, 160 Mo. App. 369; Butler v. Dorman, 68 Mo. 298; Chambers v. Short, 79 Mo. 204; Keown v. Vogel, 25 Mo. App. 35; Johnson v. Hurley, 115 Mo. 513; Knoche v. Whiteman, 86 Mo. App. 568; Hefferman v. Boteler, 87 Mo. App. 316; Nicholson v. Pease, 71 Vt. 534; Furn. Co. v. Hudspeth, 91 Pac. 843; Larpenteur v. Williams, 81 N. W. 625. (18) Where an agent acts for his own benefit in a transaction, knowledge coming to him in such a transaction uncommunicated to his principal does not bind the principal. Bank v. Lovitt, 114 Mo. 519; Bank v. Tinsley, 11 Mo. App. 498; Lamson v. Beard, 94 Fed. 30. (19) The declarations of law offered by the plaintiffs which were refused by the court contained correct

statements of the law based on evidence in the case, which were not covered by other declarations given by the court. The failure to give these declarations . was prejudicial error. (20) There is no evidence whatever that the Export Company's and Bird's accounts with the defendant were one and the same, but on the contrary there is most positive evidence that the items of Bird's account were those of his individual transaction and the items of the Export Company's account, those of his transactions as agent of that company.

*Thos. B. Harvey* and *Thos. J. Rowe* for respondent.

(1) A judgment will not be reversed for purely technical errors or irregularities from which appellant has sustained no injury. R. S. 1909, sec. 2082; Burns v. Liberty, 131 Mo. 372; Mitchill v. Bradstreet Co., 116 Mo. 226; Valle v. Pickton, 91 Mo. 207; Gordon v. Eans, 97 Mo. 587. (2) This court will not review the rulings of the trial court which were adverse to the respondent; and will only consider objections and exceptions to the rulings of the trial court made over the objections of appellant to which exception has been properly saved. The errors which are reviewable on appeal must be against the appellant. R. S. 1909, sec. 2082; Settle v. Ins. Assn., 131 S. W. 136. (3) The giving of either an erroneous instruction or the refusal of a correct instruction when the case is tried by the court, will not constitute a reversible error unless the appellant can clearly show that the action of the trial court was prejudicial error against the appellant. (4) The judgment herein being for the right party the judgment will not be reversed except for error prejudicial to the appellant and the judgment will not be disturbed unless it is evident that injustice has been done. (5) If all the sales and pur-

chases either for cash or for future delivery which
S. M. Bird made with the respondent were in law the
sales or purchases of the Export Company, then the
appellant cannot recover upon any count in the peti-
tion. The trial court found upon substantial evidence
that they were; therefore that question cannot be re-
viewed on appeal. Story on Agency, sections 160a-
161; Briggs v. Menchon, 56 Mo. 466; Nichol v. Kern,
32 Mo. App. 6. (6) An agent, without the assent of
his principal, will not be allowed to engage in the
same business as the one in which he is acting as agent.
S. M. Bird, the vice-president of the Export Company
and the sole manager of its business in St. Louis by
and through whom all its business was conducted,
could not engage in the business of buying and selling
grain for either cash or future delivery for himself,
because that was the very business he was employed
to engage in for his principal, the Export Company.
Am. and Eng. Ency. Law, Agency, p. 1082, notes 3, 4
and 5; Dennison v. Aldrich, 114 Mo. App. 700; Holt
v. Railroad, 174 Mo. 534.

REYNOLDS, P. J.—This is an action by appel-
lants, trustees of the Missouri Valley Grain & Ex-
port Company, hereafter referred to as the Export
Company. The amended petition upon which the case
was tried contains six counts, the first for $724.99, the
second for $90.63, both of these alleged to have been
balances due by defendant to the Export Company in
September, 1904, upon a cash grain account and an
option account of the company, carried upon the books
of respondent, the accounts being closed by these bal-
ances being credited to an account at that time stand-
ing on the books of respondent company in the name
of one S. M. Bird. The third, fourth and fifth counts
are to recover $1500, $1250 and $1000 respectively, paid
during the month of July, 1904, to respondent company
by the Export Company as margins on trades in grain

for future delivery, credited at the time on the books of respondent company in the name of Bird. The sixth count is based on checks which represent the amounts mentioned in the third, fourth and fifth counts, but avers that they were given as margins to support a sale of wheat for delivery in July, made by the Export Company with defendant, that is, put up as margins by the Export Company; that on the 30th of July the Export Company delivered to respondent all the wheat called for in that sale, and the margins, aggregating $3750, became released. Averring that the plaintiffs had demanded of respondent the return of these margins which respondent refused, judgment is prayed on this count for $3750, with interest.

The answer was a general denial.

The cause was tried by the court without a jury.

Probably the best way of giving an intelligent account of the facts in the case is to incorporate here the finding of facts and conclusions of law made by the learned trial judge, he having been requested by respondent, defendant below, to make them.

"From the testimony in the above case I find that S. M. Bird was the vice-president and sole general manager of the Missouri Valley Grain & Export Company, hereinafter called The Export Company, engaged in the general grain business; and that as such general manager he carried on the business of the Export Company on the floor of the Merchants' Exchange in the city of St. Louis; that all of his dealings in future purchases of grain were in his own name, but were the dealings and contracts of the Export Company; that as vice-president and sole general manager of the Export Company in St. Louis he had authority to do and transact any business of the company that it was authorized to do under its charter; that the Export Company knew that Bird, its general manager, was conducting an account with the defendant company in his own name, but for the benefit of said company.

"Whether the Export Company knew of all the deals which Bird made with the defendant company, is, therefore, it seems to me, a fact not material in this case. It could easily have informed itself. As a matter of fact, however, there seems never to have been held a meeting of any kind of the Board of Directors of the Export Company, and no one ever seems to have interfered with Bird in his complete management and control of the Export Company's business in St. Louis. No question was ever made by any other officer or director of the company as to Bird's transactions. Bird exercised unlimited authority, so far as such authority can be exercised by a general manager and executive officer of a corporation; he seems to have done whatever it pleased him to do, so far as the St. Louis end of the business was concerned. The company, itself, never complained of Bird's conduct or of any of his transactions with the defendant company. The defendant company was at no time advised of any limitation of Bird's authority. The defendant had the right to presume that as the sole general manager of the Export Company's business in St. Louis that his acts were within his authority and that the company knew what its general manager was doing. In fact, under all the circumstances in this case, it is almost impossible to distinguish between Bird as such sole general manager and the Export Company itself. If Bird failed to report his transactions, or if he appropriated money of the company to his own use, the defendant company cannot be held, inasmuch as at no time did the Export Company advise the defendant company of any limitation upon Bird's authority. I know of no law which attaches any limitation to a sole executive officer of a corporation acting within the charter powers of the corporation.

"I am thoroughly satisfied that the company knew that Bird was dealing with the defendant company in

futures and options on behalf of the company, and knew that such deals were made in Bird's individual name; and further, that the company knew that the account was so carried in defendant company's books in Bird's name. It is impossible from the evidence in this case, which shows clearly the manner in which all the business was done, to escape the conviction that the Export Company knew what Bird was doing and knew that the account was carried in his name. In fact, as stated above, it is almost impossible to disassociate the Export Company from Bird so far as the St. Louis branch of the business is concerned. Bird was in fact the whole company in St. Louis aside from a legal fiction.

"The comment which counsel makes of such dealings would be more meritorious if the dealings of the corporation were such as could be denominated businesslike, but it does not lie ·in the mouth of such a large corporation to question such dealings as the sole manager of its business throughout its short and troubled career made. There was no one here to question Bird's actions, and no one ever did question them. The company never did complain, and is not now complaining. The plaintiffs here took by assignment what Bird left, and nothing more. He left nothing. It would be a great hardship, indeed, if, under all the circumstances, the defendant company could be held liable because of Bird's conduct. Defendant company knew (and that was all it could possibly know) that Bird was the sole manager, in full and absolute control of the Export Company's business in St. Louis. I find, therefore,.that the Bird account on the books of the defendant company was the Export Company's, notwithstanding there are some 'unlikely items' in it. These 'unlikely items' may reflect on Bird, but not on defendant.

"I have been requested by the counsel for the defendant to make a finding of facts in this case, but I

deem the foregoing sufficient to justify the conclusion of law, which is that the plaintiffs take nothing by their suit. The petition is accordingly dismissed.''

Plaintiffs duly excepted to these findings and to the conclusions of law and filed their motion for new trial as well as one in arrest, both of which were overruled.

In overruling the motion for a new trial the court handed down a written memorandum in which he stated, in substance, that he had listened carefully at the trial to all the evidence and that his after-reading of the testimony had confirmed him in his belief that the Export Company knew all the while that Bird was dealing in futures; that while the company may not have received the benefit at all times of such dealings, it had selected its own representative; that he did not attach much importance to what Mr. Bird or the representative of the respondent or the secretary of the Export Company now say regarding the nature and character of Bird's dealings with the defendant company. ''It is inconceivable, almost,'' says the court, ''that Bird, during the whole period of the existence of the company in St. Louis, should have been conducting dealings in futures, and the company which he represented, and of which he was the sole representative, knew nothing. In matters of this kind we must defer, at least, somewhat to human experience and not take as gospel truth what may be said by witnesses long after the transactions in question were had.'' Setting out what the evidence showed as to the manner in which Bird had managed the business for the Export Company at St. Louis and the facts which satisfied him that the Export Company must have been aware of what he was doing there, the court concludes that the testimony in the case amply sustains the conclusion arrived at by him on it and he overruled the motion for new trial. Saving exception to the overruling of this motion as also the overruling of the

motion in arrest of judgment, plaintiffs duly perfected appeal to this court.

During the progress of the trial and before the court made its findings of fact and conclusions of law, and at the close of the testimony in the case, plaintiffs asked six declarations of law, taking up each of the several counts of their petition and asking the court to declare as a matter of law that under the pleadings and evidence the plaintiffs are entitled to recover on each of these counts. Without passing on these requests, the court took them under advisement along with the request of defendant for a special finding, and in point of fact never marked them as "given" or "refused."

Defendant had also requested the court at the conclusion of the evidence to require plaintiffs to elect as to whether they would stand on the third, fourth and fifth counts or the sixth count of the petition, claiming that the sixth count and these other three counts were in irreconcilable conflict with each other. This the court overruled.

In addition to the declarations of law before referred to, plaintiffs asked nine declarations. The court gave the first, second, fourth and ninth; re- The court gave the first, second, fourth and ninth; refused the fifth, sixth, seventh and eighth, but did not mark the third as either "given" or "refused." This third declaration asked by plaintiffs and refused is to the effect that the court declares the law to be that even though it be admitted in the evidence that Bird was the vice-president of the Export Company and manager of its St. Louis branch, yet as such vice-president he had no authority to order credits due the Export Company by defendant to be credited to his individual account with the defendant, and that before such debit of the Export Company account may be regarded as valid, it must be shown that Bird had received some authority from the Export Company other

than its general authority as vice-president or manager, and the burthen of showing such authority is upon defendant.

In addition to asking for a written finding of facts and conclusions of law, defendant asked five declarations. The court refused the first, fourth and fifth, gave the third and refused the second, writing on the second as a ground for its refusal, because the court found as a fact "that Bird's dealings were the company's dealings." Appellants are objecting and excepting to this action of the court in writing this on this declaration of respondent; whether the objection is to the matter, or to writing it on the declaration, is not very clear. The third declaration which the court gave at the instance of defendant, in substance, declares the law to be, that if at the times mentioned in plaintiffs' petition, Bird was the vice-president and general manager of the Export Company and was its agent and representative on the floor of the Merchants' Exchange of St. Louis, then he had full power and authority as such officer and agent and representative to buy and sell for it and on its account, grain for future delivery and to settle all deals in grain for future delivery, and that the Export Company is bound by any settlement of the same which he made in good faith.

Here the learned counsel for appellants file twenty assignments of error. We do not deem it necessary to set them out at length as they will doubtless appear in the report of those counsels' briefs. We shall in our opinion notice some of them specifically, as possibly important in other cases, but content ourselves with saying that we do not consider any of them tenable; most of them are exceedingly technical and do not touch the merits.

Examining the testimony in the case in the light of the assignment of error, that there is no testimony to support the finding of the court, we have concluded

that this assignment cannot be sustained. On the contrary, we find ample testimony in the record to warrant the court in arriving at the conclusion he did on the facts in the case.

The assignment as to the weight to be given to that testimony, is untenable, for that is exclusively within the control of the trial court, trying this case as an action at law.

Furthermore this case, an action at law, comes to us with a finding of facts by the court, and in such a case "a finding of fact . . . is in the nature of a special verdict which we may not interfere with on appeal if there be substantial evidence to support it." [Walther v. Null, 233 Mo. 104, 1. c. 110, 134 S. W. 993, and cases there cited.]

As to the assignments of error in the admission and exclusion of testimony, we find no error prejudicial to plaintiffs. Counsel for plaintiffs attack the action of the court in giving and refusing declarations of law and in failing to find separately as to the facts, and on each count of the petition, and also in failing to separate its finding of facts from its conclusions of law. Section 1972 of our present revision, provides that when one of the parties to the cause requests the court to make a finding of fact, "the court shall state in writing the conclusions of facts found separately from the conclusions of law." It has been held, under this section, that when the court is sitting as a jury and in an action at law, he may be asked to give declarations of law or to make a finding of facts with his conclusions of the law, but he cannot be required to do both. [Kostuba v. Miller, 137 Mo. 161, 1. c. 173, 38 S. W. 946; Moss Tie Co. v. Kreilich; 80 Mo. App. 304.] Here counsel for each of the parties, as well as the court, saw fit to disregard this and counsel asked and the court gave various declarations of law, also refusing several asked. We have followed in this course, although it is a wrong one, holding counsel to their

own lines. Examining both the finding of facts and the conclusions of law arrived at by the court, and considering them along with the declarations of law given or refused, we are able to determine exactly the theory of law upon which the learned trial court tried the case, and the facts upon which, under that theory, he reached his conclusion, and that is the point had in view by the statute. [See Moss Tie Co. v. Kreilich, supra, l. c. 307.]

It is also to be remembered that it was defendant and not plaintiffs who asked for a finding of facts. It is therefore doubtful whether plaintiffs can now assign error to any omissions, inasmuch as they themselves insisted on declarations of law being passed upon and the court yielded to their insistence. [See Settle v. Farmers' & Laborers' Co-operative Ins. Assn. of Monroe County, 150 Mo. App. 520, l. c. 529, 131 S. W. 136.] This also disposes of the point that the court failed to write the word "given" or "refused" on the declarations submitted. The trial was before the court. His ultimate action clearly shows what view he took of the several declarations asked. We have no difficulty in understanding his conclusions both on the law and the facts and see no reason to disturb either. Finding against plaintiffs on the whole case, a separate finding and judgment on each count of the petition was wholly unnecessary. We find no error in the action of the court on the declarations of law asked. Especially is this true as to those marked "third," one asked by plaintiffs, one by defendant. The one is the antithesis of the other; properly giving that asked by defendant, the court was bound to refuse that asked by plaintiffs.

The issues in the case are really simple, turning on the fact as to whether one S. M. Bird in his dealings with respondent was acting for himself or as representative of and on account of the Export Company. As found by the learned trial court, that company

never in any manner repudiated his transactions or denied his authority, but acted throughout as if Bird was its factotum, employed to manage and do all its business at St. Louis. The attempted repudiation of him and his acts is by these plaintiffs, who, as trustees holding title to all the assets of the Export Company, under an agreement to which the Harroun Elevator Company, the Export Company and others were parties, now claim the amounts sued for as of those assets. The trial court found against this claim and, as we think, correctly. Its judgment is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.

