BANK OF ATCHISON COUNTY, *Appellant*, v. DURFEE *et al.*, *Appellants*.

Division Two, December 7, 1893.

1. **Bank:** LIEN ON STOCK: NOTICE: STATUTE. A bank organized under chapter 21, Revised Statutes, 1879, cannot, under sections 706, 720 and 739, prescribe, as against pledgees of stock without notice, that no transfer of stock shall be allowed so long as the holder is indebted to the bank and that the bank shall reserve a lien on all stock for such indebtedness.

2. ———: ———: COLLATERAL SECURITY: ASSIGNMENT. Certificates of bank stock approximate to the character of negotiable paper and a mere agreement between the holder and a surety for him that the former would leave his stock in the bank as collateral security to indemnify the surety against the payment of notes which the latter had signed to enable the holder to raise money to buy the stock, does not constitute an assignment of the stock, equitable or otherwise.

3. ———: ———. A corporation which has succeeded to all the rights of a partnership, whose bookkeeper had embezzled the firm assets, may charge the bookkeeper's stock, with his shortage which accrued before the incorporation.

*Appeal from Atchison Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*McKillop* and *Lewis & Ramsay* for plaintiff, appellant.

(1) The court erred in finding for Deitz and Kenirim, as to the twenty-five shares of stock embraced in certificate number 28, and in refusing to enforce plaintiff's lien thereon, for the following reasons: *First.* Under the by-laws agreed to, adopted and used by all the stockholders, directors and officers of the bank, Wanschaffe among them, a lien was reserved upon all the stock for all debts of every kind, due or undue, held by the corporation against the stockholders and no stock could be transferred until such liabilities were paid. It was only under and by virtue of the by-laws that any certificates at all were issued for the stock in controversy. These by-laws were formally adopted by all the stockholders, who were also all directors. Their regular use in all the business of the bank would have been sufficient without formal adoption. 2 American and English Encyclopedia of Law, p. 709, sec. 5, and note. *Second.* The by-laws regulating transfer of stock and retaining lien on same were valid. Revised Statutes, of 1879, secs. 720, 739; *Ins. Co. v. Goodfellow*, 9 Mo. 149; *Spring Co. v. Harris*, 20 Mo. 383; *O'Brien v. Cummings*, 13 Mo. App. 197; *Bank v. Bank*, 45 Mo. 513; *Spurlock v. Railroad*, 61 Mo. 319; *Kahn v. Bank*, 70 Mo. 262; *Bank v. Laird*, 2 Wheat. 390; *Moores v. Bank*, 111 U. S. 156; *Goddard v. Merchants' Exchange*,

78 Mo. 609; Cook on Stock and Stockholders, secs. 525–531. *Third*. Said by-laws, even if they had never been passed as such, would with the recitals on face of stock certificate, still constitute a contract, binding upon said Wanschaffe and all parties who accepted such certificates. *Vansands v. Bank*, 26 Conn. 144; *Walus' Assignees v. Bank*, 8 S. and R. 73–78; s. c., 11 Am. Dec. 575; *Bank v. Railroad*, 13 N. Y. 597; *Savings Association v. Printing Co.*, 25 Mo. App. 642; *Jennings v. Bank*, 21 Pac. Rep. 852. The certificates were notice to those who acquired them that they were only transferable on the books of the bank in person or by attorney, on surrender of old certificate, and all parties were bound by them. *Farrington v. Railroad*, 150 Mass. 406; *Moores v. Bank*, 111 U. S. 156. Deitz was already a stockholder of the corporation and supposed to know its rules and by-laws. *McLellan v. Schools*, 15 Mo. App. 362; *Inhabitants v. Morton*, 25 Mo. 593. *Fourth*. The certificate of stock was in no sense a negotiable instrument and could not give Deitz and Kenirim any greater rights than Wanschaffe had. *Land Co. v. Dennis*, 28 Central Law Journal, No. 18, 402; *Hammond v. Hastings*, 134 U. S. 401; *Hallins v. Railroad*, 29 N. Y. S. R. 268. It was not even *quasi* negotiable; it was not accompanied with any authority to anyone to make transfer on the books of the bank. *Bank v. Railroad*, 13 N. Y. 597. *Fifth*. The mortgage of the stock, not acknowledged nor recorded, containing no authority to transfer on books, describing the note as only for $300 instead of $3,000, accompanied by the mere delivery of the unindorsed certificate, amounted, at most, only to an equitable transfer, and being inferior in point of time to plaintiff's equity, was therefore inferior to plaintiff's lien and subject to it. *Bank v. Railroad*, 13 N. Y.

297; *Railroad v. Howard*, 7 Wall. 415; Daniel on Negotiable Instruments [2 Ed.], secs. 1708, 1709. *Sixth.* The knowledge or acts of Wanschaffe, though an officer, were not binding on the bank when he was acting in his own personal interest. *Johnson v. Shortridge*, 93 Mo. 227; *Moores v. Bank, supra.* (2) Under the law and the evidence and the equities in this case the finding should have been for plaintiff as to all the stock in controversy, and the court erred in not so finding. *Bank v. Railroad*, 13 N. Y. 597. (3) The court erred in not sustaining plaintiff's motion for a new trial. The judgment should have been for plaintiff upon all the issues involved. (4) The fact that part of the defalcation occurred while the bank went under the name of Durfee & Wyatt before incorporation is immaterial. The corporation was simply a continuation of the old concern in a new form. The corporation succeeded to the private concern, absorbed and continued the use of the assets and books, and was the owner, thereof.

*Huston & Parrish* for defendants, appellants.

(1) The stock in suit is personal property. The right of Wanschaffe, therefore, to make sale of his shares of stock, or assign them or pledge them in good faith as collateral, or otherwise, the bank being solvent, was not in any manner subject to the control of the bank, and a delivery of the instrument transfering the stock from Wanschaffe to Kenirim and Deitz, together with the delivery of the certificate to them, passed the title, notwithstanding Wanschaffe may have been indebted to the bank. Revised Statutes, 1879, p. 122, sec. 739; *Bank v. Richardson*, 6 Mo. App. 454. This opinion of court of appeals was adopted by the supreme court, and judgment affirmed without comment. 74

Mo. 77; *Bank v. Lanier*, 11 Wall. 369; *Johnson v. Claflin*, 5 Dillon C. C. 75; s. c., 103 U. S. 800–806, and authorities cited; *Moore v. Bank*, 52 Mo. 377; *Spring Co. v. Harris*, 20 Mo. 382; *O'Brien v. Cummings*, 13 Mo. App. 197; *Carrol v. Savings Bank*, 8 Mo. App. 249–251; *Johnson v. Underhill*, 52 N. Y. 203; *McNiel v. Bank*, 46 N. Y. 325. (2) The purpose of requiring the transfer of stock on the books of the bank is for the benefit of the bank and those dealing with it, that the bank may know who are the shareholders and entitled to vote, receive dividends, etc. But the right of the owner of stock to transfer it is not thereby restricted, or the title thereto, when *bona fide* transferred or pledged, in any manner affected. *Bank v. Lanier*, 11 Wall. 369; *Johnson v. Claflin*, 5 Dillon, C. C. 65–76, and authorities cited; *Black v. Zachrie*, 3 How. 483; *Bank v. Laird*, 2 Wheat. 390; *Ins. Co. v. Cummings*, 13 Mo. App. 76; *Bank v. Richardson*, 6 Mo. App. 454–460. (3) Restrictions on the right of a stockholder to sell, *bona fide*, and transfer his shares of stock must be found in express legislative enactments, either expressly given or the power expressly conferred upon the company to so provide by by-laws. *Johnson v. Claflin*, 5 Dillon, C. C. 74; *O'Brien v. Cummings*, 13 Mo. App. 197, 198; *Carrol v. Mullanphy*, 8 Mo. App. 249–252, and authorities cited; *Bank v. Bank*, 20 N. Y 505; *Moore v. Bank*, 52 Mo. 379. (4) The defendants in this case had no notice of any secret lien or indebtedness from Wanschaffe to the bank, nor of the existence of any pretended by-laws. There is a vast difference between the statute laws of the state and the by-laws of the bank. The first are a part of the laws of the land, of which strangers, as well as the bank itself, would have to take notice. The latter are for the government of the affairs of the bank and of which strangers are not bound to take notice. *O'Brien v.*

*Cummins*, 13 Mo. App. 197; *Carrol v. Mullanphy*, 8 Mo. App. 249. (5) A lien created by by-law can only bind those who take the stock with actual notice of the by-law. Cook on Stock and Stockholders, sec. 523; Morawetz on Corporations [2 Ed.], sec. 203, cases cited; *Driscoll v. Co.*, 59 N. Y. 96; *Bank v. Pinson*, 58 Miss. 421; *Bank v. Bank*, 63 Cal. 359; *Adley v. Stable Co.*, 17 Vesey, 316; *Slee v. Bloom*, 19 Johns. 456. (6) The certificates have a *quasi* negotiable character. *Bank v. Richardson*, 6 Mo. App. 461; *Kortnight v. Bank*, 20 Wend. 91; 22 Wend. 348; *McNeil v. Bank*, 46 N. Y. 325; *Matthews v. Bank*, 1 Holmes, 396; *Bank v. Lanier*, 11 Wall. 377. (7) The agreement between Wanschaffe, Hunter and Deusers that Wanschaffe would leave his stock in bank as collateral to indemnify them against the payment of the notes which they signed as security for him to enable him to raise the money to buy his stock, and which was left in bank in the stock book, operated as an equitable assignment of the stock to them. *Johnson County v. Bryson*, 27 Mo. App. 341; *May v. Bank*, 80 Mo. 675; *Bank v. Bogy*, 44 Mo. 13; *Williams v. Ingersol*, 89 N. Y. 508; *Smith v. Sterrett*, 24 Mo. 260; *Lanigan's Adm'r v. Bradley*, 24 Atl. Rep. 505. (8) These defendants furnished the money to Wanschaffe to purchase his stock. To secure them, the stock was to stand in pledge—to be left in the bank for them. This was the understanding before the money was furnished, and upon this understanding the parties acted. This understanding existed before there was any indebtedness to the bank—before the stock was issued, and the sureties acted on it all the way through. Their equity is superior to that of the plaintiff, and their right attached before the plaintiff claimed to have any. *May v. Bank*, 80 Mo. 680. What is agreed to be done, must, in equity, be considered as done. *Snider v. Bank*, 51 Mo. 175.

It is not considered necessary to cite further authorities on this familiar equitable rule. (9) The court erred in admitting as evidence the pretended by-laws offered by the plaintiff. They were not the by-laws of the bank. They were not passed by its authority, or by any authority having the legal right to pass them, nor were they adopted by the plaintiff, but were passed and adopted by private citizens at 'a mass meeting, before the plaintiff had a legal existence—ten days before the plaintiff was incorporated, and ninety days or more before it was organized. Revised Statutes, 1879, p. 117, sec. 710; *Carrol v. Savings Bank*, 8 Mo. App. 249; *Albers v. Merchants' Exchange*, 39 Mo. App. 583; *Company v. Wysong*, 51 Ind. 4; Angell and Ames on Corporations, p. 323, sec. 1. (10) The court erred in charging the stock with the amount of shortage, $3,196.94, accruing prior to the organization of the plaintiff. This wrong, if perpetrated at all, was against Durfee and Wyatt, and the plaintiff has no rights whatever in the premises.

BURGESS, J.—There is no substantial difference with respect to the facts in this case, as stated by counsel for the respective parties. They are about as follows:

From about the year 1868 up to the time of the organization of the plaintiff, Durfee and Wyatt were conducting a private bank in Rockport, Atchison county, Missouri, and Wanschaffe was with them in the capacity of clerk and bookkeeper for several years prior to the organization of the plaintiff. In the latter part of the year, 1872, Durfee sold his interest in said bank to W. A. Rice. On the thirty-first day of December, 1881, a meeting was held by Wyatt, Rice, Wanschaffe and others, for the purpose of organizing a "stock company" to carry on a banking business. At

that meeting it was agreed to organize a bank with a capital stock of $15,000.00, the stock of Durfee and Wyatt Bank to be taken at $10,000.00, and the balance was subscribed by Wanschaffe $4,800.00, Rice $4,800.00, Robert Hunter $200.00, and A. B. Durfee $200.00. Hunter and Durfee, however, were mere nominal subscribers, only for the purpose of organizing the bank; they never paid anything for their stock. At this meeting Durfee and Rice were appointed a committee "on articles of incorporation," and Rice and Wanschaffe a committee on "by-laws."

On the third day of January, 1882, the parties met, and, after organizing by the selection of a chairman and, secretary, Durfee and Rice reported "articles of incorporation," which were adopted and were ordered filed with the county court, and a certified copy sent to the secretary of state. The committee on by-laws then reported the by-laws read in evidence, which are the only ones, except an amended by-law requiring the officers and employees of the bank to give bond, adopted August 10, 1887. On the tenth day of January, 1882, articles of incorporation were issued by the secretary of state, declaring said parties duly incorporated as "The Bank of Atchison County," with a capital stock of $15,000.00. A. E. Wyatt, W. A. Rice, Alfred A. Wanschaffe, A. B. Durfee, and Robert Hunter were agreed upon as directors for the first year. The bank was duly organized on the second day of February, 1882, by the election of A. E. Wyatt, president, W. A. Rice, cashier, and the bank of Durfee and Wyatt was completely merged in this bank.

About the year, 1883, Mr. Rice, cashier of the bank, died, and Mr. Wanschaffe was elected cashier in his stead, and continued to act as such up to the time of his death, January 4, 1888. Wanschaffe died by his own hand, and at the time of his death he was

indebted to the bank, as evidenced by the notes and accounts in proof, to the amount of $894.00, and was a defaulter. It is agreed that the total defalcation, as shown by the proof, is $6,303.84, and that of this shortage the amount of $3,196.94, was against Durfee and Wyatt; and the balance, $2,341.90, against the plaintiff.

The evidence discloses that at the time of the organization of the plaintiff, Wanschaffe had no money with which to pay for his stock, and that his friends helped him to raise the same by going security for him to John Smith, for $6,000.00, with which he paid therefor. It seems he paid a bonus of $1,200.00 in order to get into the concern. When the Smith note became due, Wanschaffe's friends borrowed the money from one Fairleigh with which to pay it, among others the defendants, Hunter and Deusers going his security. To pay the Fairleigh note, money was borrowed from one Harms, $3,000, and one Cooper, $3000.00, defendants Hunter and Deusers going security on the note to Harms, and other parties going security to Cooper. To pay the note to Cooper, money was borrowed from one Freihoffer, and the defendants Kenirim and Deitz became Wanschaffe's surety therefor. After the death of Wanschaffe and before the institution of this suit, Hunter and Deusers paid the Harms note and interest, $3,750.00, and Kenirim and Deitz paid the Freihoffer note and interest, $3,430.00.

In the month of July, 1887, the plaintiff, at the request of Wanschaffe, canceled his certificate of stock for $5,000.00, and reissued the same in two certificates of $2,500.00 each. One of these is claimed by Kenirim and Deitz, and the other by Hunter and Deusers. The evidence also shows that it was agreed between Wanschaffe and his first securities that the *stock should stand in pledge to secure them*—that the *stock was to be left in*

*the bank* as surety for them against the payment of the Smith note, and that such was the agreement as to each successive note executed. That such was the understanding between Wanschaffe, Hunter and Deusers surety on the note to Harms, which they paid. By agreement the stock was for that purpose left in the bank for them, but there was no manual delivery *in præsenti* of it. The amounts paid by these sureties for Wanschaffe, represent the original purchase money of the stock with which he paid therefor.

To secure Kenirim and Deitz against the payment of the note to Freihoffer, Wanschaffe delivered to them stock certificate number 28 for $2,500 and a mortgage or bill of sale on the same, but the certificate was never transferred on the books of the plaintiff.

On the fourteenth day of March, 1888, the plaintiff commenced this suit, in the circuit court of Atchison county, against A. B. Durfee, administrator of the estate of Alfred Wanschaffe, deceased, Conrad Deitz and John Kenirim, to establish a lien on the stock held by Kenirim and Deitz and that claimed by Hunter and Deusers. Afterwards, Hunter and Deusers were, on their own motion, made defendants.

Kenirim and Deitz answered, setting up the payment of the notes upon which they were sureties, and the assignment and delivery of said bank stock to them by Wanschaffe. Hunter and Deusers answered, setting up the payment of the note upon which they were sureties; the agreement with Wanschaffe that his sureties were to hold his stock as security to indemnify them against the payment of said notes, and their agreement with Wanschaffe when they signed the last note with him; that the stock was turned over to them and left in the bank for them, and that the amount paid for him was part of the purchase money for the stock pledged to them, and that they were entitled thereto.

Upon a trial the court rendered judgment against said administrator for the aggregate sum of $7,614.46, $6,303.84 of which was for money wrongfully converted, and that the plaintiff have the first lien on stock certificates numbers 18 and 29, the latter of which is claimed by Hunter and Deusers. That Kenirim and Deitz have the first lien on stock certificate number 28. That said shares of stock be sold and the proceeds arising from the sale of those first named be applied upon the plaintiff's judgment, etc., and those last named be first applied upon the payment of Kenirim and Deitz's claim, etc. Motions for new trial were in due time filed by the plaintiff against Kenirim and Deitz, and by Hunter and Deusers against the plaintiff. Both motions being overruled, the plaintiff appeals against Kenirim and Deitz, and Hunter and Deusers against the plaintiff.

It is claimed that the court erred in finding for Deitz and Kenirim as to the twenty-five shares of stock embraced in certificate number 28, because under the by-laws agreed to, adopted and used by all of the stockholders, directors and officers of the bank, Wanschaffe being one of them, a lien was reserved upon all the stock for all debts owing to the bank by any stockholder, and that such stock could not be transferred until such liabilities were paid.

Section 739, Revised Statutes, 1879, chapter 21, under which the plaintiff was organized, provides that: "The stock of every company formed under this act shall be deemed *personal* estate, and shall be transferable in the manner prescribed by the by-laws of the company; but no shares shall be transferred until all previous calls thereon shall have been fully paid in." Section 720 provides that every corporation shall keep a book in which the transfer of the stock shall be registered, and another containing the names of the stock-

holders, which shall be kept open  *  *  *  thirty days previous to an election, for examination by stock-holders; while section 706 provides that a corporation may make by-laws "not inconsistent with existing law, for  *  *  *  the regulation of its affairs and for the transfer of its stock."

The sections of the by-laws relied upon by plaintiff provide that no transfer of stock shall be allowed or valid as long as the holder is in arrears to the bank, or in any form indebted to it, and that the bank reserves a lien upon all stock issued or held by any stockholder, for the security of any debt owing in any form to said bank by such stockholder, whether the same be due or not due, or whether such liability be created before or after the issuance of such stock certificate.

The corporation had no power or authority under its charter to provide by ordinance that no transfer of stock should be allowed as long as the holder was in arrears to the bank or indebted to it, and that the bank reserved a lien upon all stock issued or held by any stockholder for the security of his indebtedness to the bank, as no such power was conferred upon it by the statute under which it was organized. When the law says that the stock shall be transferable in the manner prescribed by the by-laws of the corporation, it simply means the way in which it shall be transferred, by entry on the books or otherwise, but it is not to be inferred therefrom that the corporation had any authority to attach to such stock a lien in its favor, and especially is this so as against an innocent holder for value.

The stock was personal property, and, as was held by this court in the case of *Moore v. Bank*, 52 Mo. 377, the right of alienation is an incident to it, "and a by-law prohibiting this right or imposing any restric-tions on its exercise would be in restraint of trade and against public policy and therefore void. Whether the

legislature could authorize such restraint, is not involved in this record, and need not be passed on. The company had the power, as a cumulative mode of transfer, to have it placed upon the books of the company. But whether so entered or not, the title to the stock as between the former owner and the purchaser would pass by a sale or transfer by him or under his authority. (See the *St. Louis Perpetual Insurance Company v. Goodfellow*, 9 Mo. 149.)" *Chouteau Spring Company v. Harris*, 20 Mo. 383; *Brinkerhoff Farris Trust & Savings Co. v. Home Lumber Co., post* p. 447.

In the case of *Bank v. Pinson*, 58 Miss. 421, the plaintiff's charter provided for a directory and a president, who were empowered to make "all needful rules and by-laws for the management of the business of the company, and the mode and manner of transferring its stock." Under this provision the corporation created a by-law that "the stock of the company shall be assignable only on the books of the company, and no transfer of stock shall be made by any stockholder who shall be indebted to the company; and certificates of stock shall contain upon them notice of this provision." Certificates of stock in the corporation were issued to C., duly authenticated, and reciting the number of shares to which he was entitled, their nominal value and that they were "transferable at the office, in person or by attorney," C. borrowed money and assigned the certificates to the person from whom he borrowed the money as collateral security, and when the certificates of stock were presented to the bank for transfer on the books it was refused, and he brought an action for damages for such refusal. The bank defended on the ground that C. was indebted to it in an amount exceeding the value of his stock, and that under the by-law above quoted, it had a lien upon

his stock for his indebtedness and that he could not transfer his stock. At the time of the assignment the person to whom it was assigned had no actual notice of the lien claimed by the bank on C.'s stock. It was held that the assignee of the stock did not have constructive notice by the charter that there would be any by-law preventing a stockholder indebted to the bank from disposing of his stock, but only that there would be some regulation of the mode and manner of the transfer, and that she had the right to presume that such regulation was announced in the certificate in the words, "transferable at the office in person or by attorney" and was not bound to inquire any further. And she being an innocent purchaser for value without notice, actual or constructive, of the bank's lien on the stock, was not to the extent of her lien affected thereby.

It was held by the supreme court of California in the case of *Bank v. Bank*, 63 Cal. 359, that, "the defendant might make by-laws regulating the transfer of stock, but it could not, under the power to regulate the transfer of stock, create a secret lien upon it, which would adhere to it in the hands of a *bona fide* purchaser for value and without notice." The same rule is announced in *Bullard v. Bank*, 18 Wall. 589 and in *Driscoll v. Mfg. Co.*, 59 N. Y. 96, in which it was held that a corporation could not—under the power to make laws for the regulation of the transfer of the stock— "create or declare a lien upon the stock by by-law, nor refuse to permit a transfer until the indebtedness of the stockholder to the company be paid." Restrictions upon the transfer of such stock must have their source in legislative enactment; the corporation itself could not create such impediments. *Carroll v. Bank*, 8 Mo. App. 249.

The plaintiff had no claim to a lien upon the stock

at common law, and unless such lien was given by statute it had none, and a by-law declaring such lien in favor of the company, being without authority express or clearly implied, would be an interference with the common rights of property and the dealings of third persons, and would prevent the transfer and delivery of property. *Bank v. Smith,* 19 Johns. (N. Y.) 115; *Driscoll v. Mfg. Co., supra.*

The cases of *Bank v. Bank,* 45 Mo. 513, and the *Insurance Company v. Goodfellow,* 9 Mo. 149, relied on by plaintiffs as holding to a different rule, were bottomed upon an express provision in the charters of the companies giving them the authority to adopt the by-laws prohibiting the transfer where the owner was in debt to the company. It makes no difference, however, how the indebtedness arose, whether by contract or by embezzling the moneys of the banks. *Bank v. Bank,* 45 Mo. 513, *supra.*

As between the plaintiff and Wanschaffe, we think the by-law providing for a lien in favor of the bank of the stock for the unpaid indebtedness, although passed without authority, was binding on him, and purchasers of the stock from him with notice of such lien. At the time of the adoption of the by-law he was an officer of the bank, and continued to be such for many months thereafter, and was at the time of the transfer of the stock in controversy. As he was a party to the passage of the by-law, and always recognized it as being in force, he should not now be heard to say that it had never been legally adopted.

The purpose of requiring the transfer of the stock on the books of the bank was for its benefit and those dealing with it that they might know who were the shareholders entitled to vote at the meetings and receive dividends. The defendants in this appeal were holders of the shares in good faith for value and without notice.

The stock was delivered into their possession, as well, also, as a mortgage thereon executed by Wanschaffe all of which was subsequently placed by them in the vault of the bank for safe keeping, with the knowledge of the bank. The stock under the statute is declared to be personal property, and passed to the defendants, who were innocent holders, without being affected by any secret lien in favor of the plaintiff. "Such certificates," says DAVIS, J., in *Bank v. Lanier*, 11 Wall. 377, "although neither in form or character negotiable paper, approximate to it as nearly as practicable."

The agreement between Wanschaffe, Hunter and Deusers to the effect that Wanschaffe would leave his stock in bank as collateral to indemnify them against the payment of the notes which they had signed as security for him to enable him to raise the money to buy his bank stock was not an assignment of the stock, equitable or otherwise. There was no manual delivery of it, and it never at any time passed from under the dominion and control of Wanschaffe. On the contrary, it remained in the vault of the bank just as it was at the time the promise was made. There was not even an agreement in writing between the parties in regard thereto. *Vanstone v. Goodwin*, 42 Mo. App. 39. Not only this, but Hunter was during all this time, and was at the time of the trial in the court below, a director of the bank, and will be presumed to know all about the by-law which gave the bank a lien against the stock for any indebtedness to the bank by the holder thereof, and in so far as he was concerned was not an innocent holder of the stock for value.

Nor are these defendants in a position to invoke the doctrine of subrogation in their behalf, for in so doing they could only succeed to the rights of their principal, Wanschaffe, and nothing more, who was a party to the passage of the by-law giving the bank a

lien on all bank stock for debts due the bank by any holder thereof. They could occupy no more vantage-ground than did Wanschaffe. If, then, we are correct in these conclusions which we think borne out by both reason and authority, even in the absence of any by-law, the plaintiff would have had the right to set off Wanschaffe's indebtedness to it against this stock.

There was no error committed in charging the stock with the amount of $3,196, shortage account prior to the organization of the plaintiff bank. Although this shortage accrued while Durfee and Wyatt were the owners of the bank, yet, plaintiff succeeded to all of their rights, and it took this shortage as well as all the other bank property to make up the estimate of $10,000, at which their assets were turned into plaintiff corporation.

Upon a review of all the authorities, and a full consideration of all the questions raised by counsel, we are of opinion that the case should be in all things affirmed, and it is so ordered. All of this division concur.