## R. W. CHANDLER, Respondent, v. BLANKE TEA & COFFEE COMPANY, Appellant.

**St. Louis Court of Appeals. Submitted on Briefs March 3, 1914. Opinion Filed April 7, 1914.**

1. **APPELLATE PRACTICE: Conclusiveness of Finding.** In an action at law, tried to the court, the finding of the trial court, if supported by substantial evidence, is conclusive on the appellate court.

2. **CORPORATIONS: Lien on Stock: Rights of Innocent Purchaser: Knowledge of By-Laws.** A statement in a certificate evidencing the ownership of corporate stock, that the stock is transferable only on the books of the corporation, in accordance with its by-laws, does not charge a transferee with notice of the existence of a by-law giving the corporation a lien on the stock of a stockholder for any debt due from him to it, and, in the absence of knowledge of the existence of such by-law, the transferee takes the stock free from such lien.

3. **INSTRUCTIONS: Refusal: Assumption of Facts.** It is not error to refuse an instruction which assumes a controverted fact to be true.

4. **TRIAL PRACTICE: Special Finding of Facts.** It is not error for the trial court to refuse to make a finding of facts with its conclusions of law, under Section 1972, R. S. 1909, where the party requesting the special finding also asks declarations of law.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED.

Alphonso Howe for appellant.

(1)   The court erred in refusing to comply with defendant's request offered with its instructions that in the event the court found against it, to state in writing the conclusions of fact found in this case separately from the conclusion of law, as provided by the statutes of this State.   R. S. 1909, Sec. 1972; German Am. Ins. Co. v. Tribble, 86 Mo. App. 546; Baily v. Emerson, 87 Mo. App. 220; Fahy v. Grocer Co., 57 Mo. App. 73; Hamill v. Talbott, 72 Mo. App. 22..   (2) The by-law was valid and the notice thereof, under the facts in this case, was sufficient notice and the court erred in not so holding.   A by-law which declares that no transfer of stock should be made by persons indebted to the company, is valid.   Spurlock v. Railroad, 61 Mo. 319.   The assignee of the stockholder when he purchases the stock, if he has knowledge of the lien, then he will take the stock subject thereto; for as to him it was not a secret lien; he took the transfer with full knowledge of the equity between the parties.   It is only the bona-fide purchaser without notice of such unauthorized by-law, that is protected from the lien.   Bank v. Kerdolff, 75 Mo. App. 297; 1 Cook on Stockholders, Secs. 522-524; Savings Ass'n v. Printing Co., 25 Mo. App. 642; Bank v. Durfee, 118 Mo. 431; Trust, etc., Co. v. Lumber Co., 118 Mo. 447; Jennings v. Bank, 79 Cal. 323; Ins. Co. v. Goodfellow, 9 Mo. 154; Bank v. Bank, 45 Mo. 573; Spurlock v. Railroad, 61 Mo. 319; 4 Thompson on Corporations, Secs. 4008-10-12.

R. P. & C. B. Williams for respondent.

(1)   The refusal of a corporation to transfer stock in the name of an innocent purchaser thereof, is a conversion and entitles the holder to the full value of the

stock at the time of said conversion with interest. Brinkehoff v. Home Lumber Co., 118 Mo. 447; Withers v. Bank, 67 Mo. App. 118; Bank v. Durfee, 118 Mo. 444; Cook on Corporation, Sec. 584. (2) The provision in the certificate in question that the stock is "transferable only upon the books of the company in person or by attorney in accordance with the by-laws of the corporation upon surrender of the certificate properly indorsed," was no notice, actual or constructive of any claims or liens against such stock. Brinkehoff v. Lumber Co., 118 Mo. 447; Crenshaw v. Mining Co., 110 Mo. App. 365; Cook on Corporations, Secs. 524 and 525. (3) Where the certificate is marked on its face "fully paid and non-assessable" a bonafide purchaser cannot be held liable on said stock in any way, either to the corporation, corporation creditors, or other persons, even though the stock was not paid up as represented. Johnson v. Lullman, 88 Mo. 567; Erskine v. Lowenstein, 11 Mo. App. 595; Johnson v. Lalleman, 15 Mo. App. 55; Keystone Bridge Co. v. McCluney, 8 Mo. App. 496; Cook on Corporations, Sec. 50. (4) A pledgee holding a certificate indorsed in blank may transfer a good title to an innocent purchaser. 10 Cyc. 10, Sec. 643; Cook on Corporations, Sec. 431. (5) The court, at the request of the defendant, gave and refused certain declarations of law. The court properly refused the request of the defendant to also make a finding of the facts with its conclusions of law. It could not be required to do both. Backer v. Seaboard Fire & Marine, 174 Mo. App. 82; Stewart v. Grain Company, 163 Mo. App. 486; Moss Tie Co. v. Kuilich, 80 Mo. App. 304, precisely like the case in hand; Kostuba v. Miller, 137 Mo. 161; Cochsen v. Thomas, 131 Mo. 258; German Insurance v. Tribble, 86 Mo. App. 557.

REYNOLDS, P. J.—This is an action by plaintiff, respondent here, to recover from defendant the value

of certain shares of stock and dividends alleged to have accrued thereon, it being charged that defendant, refusing to transfer the stock to plaintiff, was liable in damages for conversion.

Alleging ownership of the stock in June, 1911, and demand for the transfer and refusal of the company to make the transfer, and that since the purchase of the stock by him dividends had accrued to the amount of $600, which defendant had refused to pay over to him on demand, plaintiff asked judgment for $5000 with interest and costs.

The answer avers that this certificate for forty shares was issued to Parchman in October, 1910, and cotemporaneous with and as part of a certain contract for sale of defendant's products by Parchman, and that by the terms of the contract it was, among other things, provided that Parchman would purchase and pay for and own and hold these forty shares during the life of the contract, which was to run for three years; that prior to entering upon this contract with Parchman and the issue of the stock to him, defendant had called upon Parchman to furnish references as to his financial and commercial capability of carrying out the contract; that Parchman had referred defendant to Chandler, the plaintiff, and to one Stovall, and that defendant thereupon entered into the contract with Parchman and issued the stock certificate to him at par, that is, $100 per share; that he had paid for all of it, with the exception of $450, which he still owes, and that Parchman had contracted a further indebtedness to defendant for merchandise consigned to him in the amount of $980.40, a total indebtedness to defendant of $1430.44; that a dividend was declared on the stock in February, 1911, amounting to $54.65, which was passed to the credit of Parchman, and that Parchman now owes a balance of $1375.79, defendant claiming a lien against this stock for this under its by-laws. It is further charged that Stovall, conspiring with

Parchman to defraud defendant out of the indebted-
ness above mentioned, and Stovall having full knowl-
edge thereof, Parchman had transferred the stock to
Stovall, who made a written demand on defendant to
transfer the stock to him; that defendant had notified
Stovall of the indebtedness above mentioned and that
the stock would only be transferred on the books of the
company when that indebtedness was discharged; that
Parchman and Stovall, further conspiring to defraud
defendant of this money, transferred the stock to
Chandler, who it is charged, had full knowledge of
the indebtedness and of all the facts and circumstances
above mentioned, and that he, with Stovall and Parch-
man, had conspired and are now conspiring by means
of this suit to defraud defendant out of the indebted-
ness.  It is further alleged that Parchman is insolvent
and that the only way defendant can receive the in-
debtedness above mentioned is by the enforcement of
its lien upon the stock which it now asserts.  It is
further averred that neither Chandler nor Stovall are
innocent purchasers of the stock for value and that
they have no financial interest in it whatever, except
as the agents of Parchman in the carrying out of the
conspiracy above mentioned.  Finally defendant avers
that it stands ready and willing at all times and has
so notified Parchman, Stovall and Chandler that it
would transfer the certificate of stock to whomsoever
either might direct upon the payment to it of the in-
debtedness of $1375.79 above mentioned; and it ten-
ders in its answer, upon the payment of that indebted-
ness, to transfer the stock upon its books in accord-
ance with the law.

The reply was a general denial.

The trial was before the court, a jury being
waived.

It appears that defendant had issued to one Ed-
gar L. Parchman a certificate for forty shares of its
common stock, the certificate reciting that Parchman

"is entitled to forty shares of the common capital stock of the C. F. Blanke Tea & Coffee Company, transferable only upon the books of the company in person or by attorney, in accordance with the by-laws of the company, upon surrender of this certificate properly indorsed." It also appeared that Parchman had indorsed the certificate in blank, selling the stock and delivering the certificate to one Stovall, an attorney; that Mr. Stovall, desiring to sell, had placed the certificate in the hands of Messrs. Williams, attorneys in St. Louis, to sell, and had caused the certificate to be presented by these gentlemen to defendant, asking that it issue a new one in the name of Stovall. This the defendant declined to do unless the lien it claimed was paid off. Afterwards Mr. Stovall, the certificate still being in the hands of Messrs. Williams, sold the stock to Chandler, advised Messrs. Williams to that effect and directed that they hold the certificate for plaintiff, Chandler. This it appears they agreed to do, and they, presenting it to defendant for transfer in favor of Chandler, transfer was refused unless the defendant company was paid the moneys which it claimed the original owner Parchman owed it, both on account of purchase of this stock and on the indebtedness growing out of his other transaction with defendant.

The by-laws themselves were not in evidence but it was admitted "that the by-laws of the company provide that the stock of the company is only transferable upon the surrender of the certificate for cancellation on the books and all debts of the holder have been paid."

There was testimony on the part of plaintiff to the effect that after considerable negotiation between him and Mr. Stovall, which had run along for some thirty days, looking to the purchase of this certificate by plaintiff from Stovall, they had finally agreed upon $3250 as the price, of which plaintiff paid $750 in cash and gave a note running twelve months for the bal-

ance, $2500, the latter not paid at the time of the trial and not then due.

Without going into the evidence in detail, it is sufficient to state that there was evidence for plaintiff tending to show that he was an innocent purchaser for value of this certificate of stock without notice or knowledge either of the by-laws of defendant, or of any indebtedness from Parchman to defendant, and without knowledge of the fact that a transfer had been refused to Stovall or his attorney before plaintiff purchased the stock from Stovall. So that the point made by learned counsel for appellant, that its demurrer to the evidence should have been sustained because of a total failure of evidence, is not well taken. During the course of the introduction of the evidence on the part of plaintiff, the learned trial court said that it seemed to him that the issue in the case is whether or not plaintiff had notice of the claim of defendant against Parchman and of the by-law giving defendant a lien on the stock; that this is the only issue in the case. That was assented to by counsel. Even without their assent, it is very clear that that is the issue and the only one. Whether the purchase by plaintiff was in good faith and for value, and without notice of the by-law or claim of defendant to a lien, was a question of fact, its determination resting with the trial court and its finding, if supported by substantial evidence, as we find it was, concludes us as an appellate court. This covers the first assignment of error by the learned counsel for appellant, that assignment based on the refusal of the court to give an instruction in the nature of a demurrer.

The second assignment of error is to the refusal of the court to give an instruction, numbered one, asked by defendant. That instruction, as asked, was to the effect that the court declares as a matter of law "that the provision on the face of the certificate

of stock in question, that the stock is 'transferable only upon the books of the company in person or by attorney, in accordance with the by-laws of the corporation upon surrender of the certificate properly indorsed,' was notice to the plaintiff actual or constructive and sufficient to put him on inquiry of the existence of a by-law creating a lien on the stock to secure any indebtedness due by the original holder of such stock to the corporation, and was notice to the plaintiff sufficient to put him on inquiry of restrictions on the transfer of said stock reserved by the corporation and the plaintiff cannot recover in this case as against defendant.''

The fifth assignment practically involves the consideration of the same proposition, it being to the effect that the by-law of the company was valid and the notice thereof under the facts in the case was sufficient notice, and it is argued that the court erred in not so holding. We consider them together.

In Cook on Corporations (2 Ed.), secs. 524, 525, it is stated that ''a lien created by by-law binds only those who take the stock with notice of the by-law. This is because by-laws do not of themselves impart or convey notice. A transferee of a certificate of stock is not bound to take notice of a by-law giving a corporation a lien on the stock for debts due from the registered owner to the corporation, even though the certificate of stock stated on its face that it was subject to the by-laws.'' Among the cases cited in support of this by the text-writer are Des Moines National Bank v. Warren County Bank, 97 Ia. 204, and Just v. State Savings Bank of Ionia, 132 Mich. 600. Both these authorities are directly in point on this proposition. So also is Bullard v. Bank, 18 Wall. (85 U. S.), 589, it being held in the latter case that the act under which the bank was organized, the National Banking Act of 1864, not providing for any such lien, the corporation could not by its by-laws impose the lien; that a

by-law giving to a bank a lien on stock of its debtors is not a regulation of the business of the bank, or a regulation of the conduct of its affairs within the meaning of the National Banking Act of 1864, and therefore not such a regulation as under the act national banks have a right to make. It was further there held that a purchaser without actual notice of the by-laws, or of the claim of the bank was not within the provisions of any such by-law.

So it has been held by our Supreme Court in two cases, Bank of Atchison County v. Durfee, 118 Mo. 431, 24 S. W. 133, and Brinkerhoff-Farris Trust & Savings Co. v. Home Lumber Co., 118 Mo. 447, 24 S. W. 129. In Bank v. Durfee, supra, the by-laws of the corporation relied upon provided that no transfer of stock shall be allowed or valid as long as the holder is in arrears to the bank, or in any form indebted to it, and that the bank reserves a lien upon all stock issued or held by any stockholder, for the security of any debt owing in any form to the bank by the stockholder, whether the same be due or not due, or whether such liability be created before or after the issuance of such stock certificate. Our Supreme Court held that the corporation had no power or authority under its charter to make any such a provision, and it further held (l. c. 442): "When the law says that the stock shall be transferable in the manner prescribed by the by-law of the corporation, it simply means the way in which it shall be transferred, by entry on the books or otherwise, but it is not to be inferred therefrom that the corporation had any authority to attach to such stock a lien in its favor, and especially is this so as against an innocent holder for value." That is peculiarly applicable to this case, for the words here relied upon in this certificate to the effect that the stock is transferable "in accordance with the by-laws of the company upon surrender of this certificate properly indorsed," certainly can have no more effect in the cer-

tificate than, said our court in Bank v. Durfee, they have in the law itself. It is further held in that case that "the stock was personal property, and, as was held by this court in the case of Moore v. Bank, 52 Mo. 377, the right of alienation is an incident to it, 'and a by-law prohibiting this right or imposing any restrictions on its exercise would be in restraint of trade and against public policy and therefore void. . . . The company had the power, as a cumulative mode of transfer, to have it placed upon the books of the company. But whether so entered or not, the title to the stock as between the former owner and the purchaser would pass by a sale or transfer by him or under his authority.' "

In Brinkerhoff-Farris Trust & Savings Co. v. Home Lumber Co., supra, it is said (l. c. 458) that it has been uniformly ruled in this State, with the exception of White v. Salisbury, 33 Mo. 150, "that in the absence of a legislative enactment restricting the transfer of stock to any particular mode, the transfer is complete on delivery of the certificate with power to transfer and the payment of the purchase money, not only between vendor and vendee, but when the corporation has unjustifiably refused to make the transfer on its books, against a creditor of the vendor who, without notice of the transfer, attaches the stock."

It is not pretended that the corporation, defendant here, was organized under any special charter, but it is organized under the general corporation laws of our State relating to manufacturing and business corporations. No provision retaining or authorizing the retention of a lien upon the stock in favor of the corporation is to be found in those laws. We therefore hold that the court acted correctly in refusing this instruction, and that the by-law relied upon by defendant is of no force against this plaintiff, the court in reaching its conclusion and under the view of the evidence which it undoubtedly held having found as a

matter of fact that plaintiff was an innocent purchaser for value, a purchaser without knowledge or notice of this by-law.

The next error complained of is to the action of the court in refusing to give defendant's instruction number 2. That instruction was to the effect that "possession of the means of knowledge of a particular fact justifies a finding of actual knowledge of such fact, and one having such knowledge or information as is sufficient to put a man of ordinary prudence on inquiry is to be regarded as having actual notice, and the admissions of the plaintiff that he had talked over with Stovall the matter of the purchase of the certificate of stock for thirty days prior to the alleged purchase and knew it was issued by defendant to Parchman and in the name of Parchman at the time who he knew at the time had failed in business and had not been transferred by defendant to Stovall from Parchman on its books, and that during the thirty days plaintiff knew that Stovall had said certificate of stock in the hands of Mr. Williams, who was Stovall's attorney and representing Stovall in the matter of said stock together with the inadequacy of the consideration was, as a matter of law sufficient to put plaintiff on his inquiry, that there was some infirmity attached to said certificate of stock under all these circumstances and he cannot recover in this case as against defendant." This instruction was properly refused for several reasons, among others, for the sufficient reason that it assumed, as facts, facts which to say the least were controverted and as to which the court undoubtedly had found differently, as take the fact of inadequacy of consideration. It cannot be said that the consideration here passing between the parties was inadequate. It may be added that while it appears that Mr. Williams had been acting for Mr. Stovall when he made the demand, he was not then attorney for plaintiff and did not become such until after plaintiff purchased, and plain-

tiff's testimony is that he did not then know of the transaction between Stovall, Williams and the defendant when he purchased the stock.

The next error assigned by learned counsel is to the refusal of the court, at the request of defendant, if he found against defendant, to state in writing his conclusions of facts found in this case separately from his conclusions of law, as provided by statute. That proposition might be tenable but for the fact that it has been held by our Supreme Court and by this court that where the party asking for this finding also asks declarations of law, that it is not error to refuse to make this finding; that the court cannot be required to do both. [See Stewart et al. v. Brinson-Waggoner Grain Co., 163 Mo. App. 473, l. c. 486, and cases there cited, 143 S. W. 868; Backer v. Seaboard Fire & Marine Ins. Co., 174 Mo. App. 82, 156 S. W. 829.] Here the court, at the request of defendant, gave several declarations of law.

The next assignment of error is that the court erred in not holding that Chandler, under the circumstances disclosed by this record, had sufficient notice to put him upon his inquiry and that he could not recover in this case. That was the main question tried before the court; it was a question of fact. The finding which was against this contention of counsel, is conclusive on us.

The final assignment is to the alleged error of the court in overruling a motion for a new trial. From what we have said above, it is clear that this motion was properly overruled.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.