SNYDER v. EAGLE FRUIT CO. et al.

(two cases).

EAGLE FRUIT CO. et al. v. SNYDER.

Nos. 10039–10041.

Circuit Court of Appeals, Eighth Circuit.
Feb. 13, 1935.

Rehearing Denied April 5, 1935.

James C. Jones, of St. Louis, Mo. (Lon O. Hocker, Frank Y. Gladney, James C. Jones, Jr., and Jones, Hocker, Gladney & Jones, all of St. Louis, Mo., on the brief), for Eagle Fruit Co. et al.

Arthur J. Freund, of St. Louis, Mo., for John W. Snyder, successor receiver of Vandeventer Nat. Bank of St. Louis.

Ruby M. Hulen, of St. Louis, Mo., for John W. Snyder, receiver of Grand Nat. Bank of St. Louis.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

These appeals are to reverse and to modify a decree in equity rendered in the suit of the receiver of the Vandeventer National Bank against the Eagle Fruit Company, its three stockholders, Samuel C. Breadon, W. C. Anderson, and Susan B. Schneider; the conservator of the Grand National Bank of St. Louis, being also a party defendant. The suit was in the usual form of stockholder's bill brought by the receiver, as the holder by way of pledge of certain capital stock of the Eagle Fruit Company, for an accounting on the part of Samuel C. Breadon and W. C. Anderson, officers of the corporation, of their conduct of the corporate affairs, and to compel Samuel C. Breadon to pay to the corporation $50,000 which it was alleged he owed it. Winding

up of the affairs of the corporation was also prayed for and distribution to creditors and stockholders. Jurisdiction exists because the suit arose under laws of the United States and involves the winding up of the affairs of a national bank. The suit was tried upon the pleadings and stipulation of facts, and very full and complete findings and conclusions were made by the trial court.

By the terms of the decree the affairs of the Eagle Fruit Company were wound up; defendant Samuel C. Breadon was held bound on his contract to pay to creditors and stockholders of the Eagle Fruit Company $50,000 in consideration of the company's having conveyed its farm to a third party at his instance and for his use and benefit. The receivers of the Vandeventer National Bank and of the Grand National Bank were found to be pledgees in good faith of the capital stock of the Eagle Fruit Company which belonged to W. C. Anderson, and were found to have liens as such pledgees superior to any claim of Samuel C. Breadon upon the stock, and Breadon was ordered to make payment to them accordingly. Mr. Breadon was not required to pay interest on the $50,000 found to have been due from him to the corporation since 1932.

Each of the receivers files a separate appeal and Samuel C. Breadon and the Eagle Fruit Company join in an appeal.

It appears that the Eagle Fruit Company was a Missouri corporation having 245 shares of capital stock outstanding, of which Susan B. Schneider owned 61.33⅓ shares and Samuel C. Breadon and W. C. Anderson each had 91.83⅓ shares. Practically the only important asset of the corporation was a fruit farm in Florida of some 893 acres, for which the corporation was offered property at 15th and Spruce streets in St. Louis in exchange. The proposal contemplated the payment of $35,000 cash for the St. Louis property in addition to a deed for the Florida farm. The Eagle Fruit Company did not have the cash necessary to carry out the exchange, but a contract was arrived at whereby terms of an exchange were agreed upon, and, in pursuance of the contract, the Eagle Fruit Company conveyed its 893 acres of Florida land to the nominee of the owners of the St. Louis property and the St. Louis property was deeded by its owners to Samuel C. Breadon for his exclusive use and benefit. As consideration to the Eagle Fruit

Company for such transfer of its lands, Samuel C. Breadon promised to pay it $50,000 on or before June 15, 1932. Mr. Breadon has not paid the money or made any tender of payment, although it is stated in argument that he has applied some $3,000 to the payment of claims of creditors of the corporation.

It appears that prior to the consummation of the exchange of properties W. C. Anderson was indebted to Samuel C. Breadon in a sum approximating $10,000 and Anderson had agreed with Breadon that he would turn over to Breadon all of his (stock) holdings in the Eagle Fruit Company free of all debts and liens, and that Breadon should deduct all of Anderson's notes with interest from the amount to be paid to Anderson as a stockholder, if Breadon "should elect to purchase the Eagle Fruit Company."

Breadon at all times believed that Anderson owned the 91.83⅓ shares of capital stock of the Eagle Fruit Company, which appeared in Anderson's name on the stock record of the company free and clear of liens, and one of the inducements to Breadon in causing the exchange of properties to be made and in agreeing to pay $50,000 for the assets of the Eagle Fruit Company was that he would get the amount that Anderson owed him out of the distributive share of the $50,000 to which the owner of the Anderson stock would be entitled on winding up the Eagle Fruit Company. The fact was, however, that Anderson had pledged one of his stock certificates for 76½ shares of Eagle Fruit Company stock to the Vandeventer National Bank as collateral for loans which aggregate over $9,000, and had pledged the remainder of his shares to the Grand National Bank for loans amounting to $3,339.51, and these banks had the stock in their possession duly assigned by Anderson in blank. So that Anderson, being insolvent, could not comply with his promise to turn the stock over free and clear of liens to Breadon.

There is no complaint against that part of the decree of the trial court directing that the affairs of the Eagle Fruit Company be wound up and its assets distributed to creditors and stockholders, but the receivers of the banks complain that the trial court erred in not compelling Mr. Breadon to pay interest on the sum of $50,000 which it clearly appears and the court found Mr. Breadon promised to pay to the Eagle Fruit Company on or before June 15, 1932. The trial

court found that Mr. Breadon had not paid the money because of the pendency of this suit and it is contended that there was uncertainty by reason of the suit and conflicting claims that excused payment or tender. It is also contended that decree for no interest was justified for lack of specific prayer for interest in the plaintiff's bill of complaint.

■ We think it clear that interest should have been awarded. Mr. Breadon received the St. Louis property as the result of the Eagle Fruit Company's transfer of its Florida farm, and at the same time that the Eagle Fruit Company divested itself of its property for his benefit, and he has had the use of the St. Louis property ever since. He promised to pay the money at a certain date and we see no excuse for his not having paid or tendered it, which would be sufficient to save him from payment of interest. The plain provision of the Missouri statute (section 2839, Rev. St. Mo. 1929 [Mo. St. Ann. § 2839, p. 4623]) requires payment of interest on the breach of such a promise to pay and the plaintiff's pleading, in the usual form of a stockholder's bill, was sufficient.

In Spalding v. Mason, 161 U. S. 375, at page 395, 16 S. Ct. 592, 600, 40 L. Ed. 738, the court said:

"Interest is allowed both at law and equity upon money due. As said by this court in Curtis v. Innerarity, 6 How. 146, 154 [12 L. Ed. 380], considering and overruling an exception to an allowance of interest from the time certain payments had become due:

" 'It is a dictate of natural justice, and the law of every civilized country, that a man is bound in equity not only to perform his engagements, but also to repair all the damages that accrue naturally from their breach. * * * Every one who contracts to pay money on a certain day knows that, if he fails to fulfill his contract, he must pay the established rate of interest as damages for his nonperformance. Hence it may correctly be said that such is the implied contract of the parties.'

"It is no hardship for one who has had the use of money owing to another to be required to pay interest thereon from the time when the payment should have been made. Crescent Min. Co. v. Wasatch Min. Co., 151 U. S. 317, 323, 14 S. Ct. 348 [38 L. Ed. 177].

"The circumstance that the complainant may have considered himself entitled to an account, and to receive a greater sum than was actually found to be due, does not affect complainant's right to the interest upon what was really due. Sturm v. Boker, 150 U. S. 312, 341, 14 S. Ct. 99 [37 L. Ed. 1093]."

■ The trial court found among its conclusions of law "that counsel for plaintiff is not entitled to an allowance for his services as solicitor for plaintiff herein" and error is assigned upon the ruling.

In this regard it appears that in the amended bill of complaint there was no specific prayer for the allowance of such solicitor's fee. But it was alleged in the bill that the promissory notes executed by Anderson to the Vandeventer Bank contained clauses which provided that "in the event payment on said notes and each of them shall not be made at maturity and the same is placed in the hands of an attorney for collection, the maker thereof, being defendant, W. C. Anderson, agrees to pay all costs of collecting said notes including an attorney's fee of 10% of the principal and interest thereon remaining unpaid, and plaintiff further states that each of said notes have been placed in the hands of an attorney for collection." The record indicates that the petition of the solicitor to be allowed a fee was not filed until after the case had been tried and submitted to the court. The trial court, in computing the distributive share of the corporate assets which Breadon was ordered to pay to the banks' receiver, added 10 per cent. to the gross amount of the notes, principal, and interest, and so awarded the plaintiff, as attorney's fee, the total amount of $873.76. Having in mind that the suit was in the main one in which the receivers of the banks were adversary parties to the defendant Breadon, we are not persuaded that the order for the payment of attorney's fee in the amount of $873.76 to the plaintiff was erroneous.

■ It appears that the collateral pledge notes given by Anderson to the bank contained the provision that his stock was pledged "for the purpose of securing (Anderson's notes and) all liabilities actual or contingent then existing or which may thereafter arise to the Vandeventer National Bank or its assigns." Anderson was a stockholder of the bank to the extent of 30 shares, upon which an assessment of $3,000 has been made by the Comptroller

of the Currency, and the plaintiff receiver claimed that the pledged stock was also security for the amount of the stock assessment. We think the trial court rightly denied the claim. The pledge agreement was exacted from Anderson in his capacity as a customer of the bank liable to become indebted to the bank as a going institution in the course of business, and reflects no intention to single him out from among the bank's stockholders and impose upon him a burden of giving security not common to stockholders. Although the words "all liabilities" are used, they do not cover liability not in pari materia with the subject of the contract, like that liability which falls upon a stockholder as such upon the failure of the bank by operation of the statute.

The appellants Samuel C. Breadon and Eagle Fruit Company assert error in the holding of the trial court that the receivers of the banks had first liens on the Anderson stock and a right to the distributive share of the corporate assets attributable to that stock prior to any right of Samuel C. Breadon.

The statute of Missouri under which the corporation was organized (article 1, ch. 32, Rev. St. Mo. 1929) provides—

Section 4549, Rev. St. Mo. 1929 (Mo. St. Ann. § 4549, p. 1996):

"The stock of every company formed under this article shall be deemed personal estate, and shall be transferable in the manner prescribed by the by-laws of the company."

Section 4550, Rev. St. Mo. 1929 (Mo. St. Ann. § 4550, p. 1997):

"Every such corporation shall keep a book in which the transfer of shares of its stock shall be registered."

And the by-laws of the Eagle Fruit Company provided:

"Article II, Section 3: Certificates of stock shall be issued, in numerical order, from the stock certificate book, and shall be signed by the President or Vice-President and Secretary and sealed by the Secretary with the corporate seal of the company."

"Article II, Section 4: Transfer of all stock shall be made only on the books of the company."

But in the absence of any statutory lien it is well settled, both by the decisions of Missouri and federal decisions, that upon a pledge of stock certificates such as was made by Anderson to the banks in this case, the banks became the holders of the corporate shares for value, free from any secret liens in favor of the corporation or of third persons. O'Neil v. Wolcott Mining Co. (C. C. A. 8) 174 F. 527, 27 L. R. A. (N. S.) 200; Braden v. Sullivan County Bank (Mo. App.) 251 S. W. 754; Brinkerhoff-Farris Trust & Savings Co. v. Home Lumber Co., 118 Mo. 447, 24 S. W. 129; Chandler v. Blanke Tea & Coffee Co., 183 Mo. App. 91, 165 S. W. 819; Eubank v. Bryan County State Bank (C. C. A. 8) 216 F. 833; Bank of Atchison County v. Durfee, 118 Mo. 431, 24 S. W. 133, 40 Am. St. Rep. 396; Mitchell v. Newton County Bank, 220 Mo. App. 223, 282 S. W. 729; National City Bank v. Wagner (C. C. A. 7) 216 F. 473; 39 L. R. A. (N. S.) 292, Note; Wolf v. Amer. Trust & Savings Bank (C. C. A. 7) 214 F. 761; Elliott v. E. C. Miller & Co. (C. C.) 158 F. 868; Davis v. Finch (C. C. A. 2) 236 F. 89.

On the other hand, Breadon dealt with Anderson and loaned him money and took from him an agreement to deliver his Eagle Fruit Company stock clear and free from liens without ever ascertaining whether Anderson had the stock or not. Breadon acquired no lien on the stock for the loans he made to Anderson.

It is contended for Breadon that the contract for the transfer of the Eagle Fruit Company's farm to third parties and for the transfer of the St. Louis property to Breadon and for the payment by him of $50,000 to the Eagle Company was a "four-partite" agreement written in several "con-stating documents"; that Anderson was a party to it; and that it was single; so that the banks, even if they had valid liens on Anderson's stock in the Eagle Company, could not get any part of the $50,000 due from Breadon until Anderson's debt to Breadon was paid. There is an argument that by suing to compel Breadon to pay the promised $50,000 to the Eagle Company the receiver recognizes the contract as pictured and so has elected to be bound by such contract and must submit to Breadon's being paid first out of the share of the corporate assets distributable to the Anderson stock.

It would appear strange if Breadon could by any devising with Anderson procure the Eagle Company to deed away all of its property for Breadon's sole benefit and could then avoid paying the innocent holders of the corporate stock. Breadon with

Anderson had complete charge and control of the corporation and acted without any notice to either of the banks. But the documents before the court show a clear and simple contract between the Eagle Fruit Company and Breadon and the St. Louis property owners, defining all the terms for the exchange of properties, pursuant to which the deeds were executed, and the finding of the trial court that "the defendant Samuel C. Breadon, agreed to pay to the defendant, Eagle Fruit Company, on or before June 15, 1932, the sum of $50,-000.00" is fully sustained. When the conveyances effecting the exchange of properties and vesting the St. Louis property in Breadon were completed, the result of the transaction was, as found by the trial court, that "the defendant Eagle Fruit Company was divested of all its substantial assets, except for the fact that the defendant Samuel C. Breadon became indebted to the company in the sum of $50,000.00 payable on or before June 15, 1932." The agreement which Anderson and Breadon personally and independently entered into was evidenced by a letter from Anderson to Breadon to the effect that in consideration of Breadon's furnishing the money to make the sale of the Eagle Fruit Company's property possible, Anderson agreed to turn over to Breadon all of his holdings in the Eagle Fruit Company free of all debts and liens. It is stated in the same letter that Breadon is to make Anderson an additional loan of $1,000. We find nothing in the letter or in the transactions which Breadon had with Anderson concerning Anderson's stock in any wise tending to relieve Breadon of his obligation to pay the Eagle Company the $50,000. Anderson had no part in the exchange of properties except as a voting stockholder of the Eagle Fruit Company. He parted with nothing and received nothing in the exchange of properties. Breadon was the one and the only one who received all that was allowed in the transaction for the Eagle Company's property. The cases cited by these appellants which have to do with instances where parties to contracts try to secure the benefits of their contracts without the burdens, as well as those cases in which a contract, although evidenced by more than one writing, is found to be really single, are without application. The trial court rightly held that the receivers of the banks were entitled to be paid on account of the Anderson stock ahead of Breadon.

The appellants Breadon and the Eagle Fruit Company also contend that the amount of the debts which Anderson owed to the corporation ($2,406.79 as found by the court) ought to have been offset against the receivers' claim for distribution based on the pledge of Anderson's stock to the banks. We are persuaded that the corporation had no lien upon the stock standing in Anderson's name on account of any debt owing by him to the corporation and that the right of the pledgees of the stock to recover their distributive share is superior to the claim of the corporation against Anderson on account of debts owed by him to the corporation. Brinkerhoff-Farris Trust & Savings Co. v. Home Lumber Co., 118 Mo. 447, 24 S. W. 129; Bank of Atchison County v. Durfee, 118 Mo. 431, 24 S. W. 133, 40 Am. St. Rep. 396; Wolf v. American Trust & Savings Bank (C. C. A. 7) 214 F. 761; National City Bank of Chicago v. Wagner (C. C. A. 7) 216 F. 473; Braden v. Sullivan County Bank (Mo. App.) 251 S. W. 754. The trial court rightly refused to allow for any offset for Anderson's debt to the corporation in arriving at the amount of assets for distribution.

The decree of the trial court is found to be erroneous in that we find that Samuel C. Breadon is chargeable with interest at the rate of 6 per cent. per annum on the sum of $50,000 from July 1, 1932, until paid. The addition of interest to the sum of $50,-000 due from Breadon to the corporation not only increases the amount distributable to the stockholders, but renders the exact amount uncertain until payment is actually made by Breadon, and the plaintiff has insisted that the only orderly procedure is to require Breadon to pay the whole amount he owes the corporation into court for distribution. Such is the ordinary course, but we think that no prejudice will be occasioned the parties if the form in which the District Court made its decree is preserved. Let the amount due from Breadon be determined as of a day certain and let the amounts due to the receivers of the banks and Susan B. Schneider be computed to the same date. The decree should order Breadon to forthwith pay all the respective parties the amounts found due them with interest at 6 per cent. until paid.

Decree affirmed except as it is ordered that modification be entered in accordance with opinion.